Good morning, Your Honors, and may it please the Court, Patricia Young representing appellant William Kirkpatrick, Jr. I'd like to start today by discussing the waiver issue, because when the California Supreme Court held that Mr. Kirkpatrick waived his state exhaustion petition, it precluded all merits review of more than 20 federal constitutional claims. And yet it did so despite the fact that there was no evidence that the waiver was knowing and intelligent, and in fact, without conducting any inquiry to determine— What Supreme Court case says that it has to be knowing and intelligent? Your Honors, the Supreme Court first applied this in Whitmore v. Arkansas. That's a direct appeal. Yes. What Supreme Court case holds that the waiver of a collateral attack requires a knowing and intelligent waiver? That's Demosthenes v. Ball, in which the petitioner waived— I remember Demosthenes well, and that was a direct appeal, too. No, it's the waiver of the state petition in Demosthenes, Your Honor. Okay. And this Court has also applied the same— As I recall, Ball didn't survive that one. He was permitted to waive, you are correct. And this Court has also applied the knowing, intelligent, and voluntary standard to a state petitioner's waiver of a state petition in Dennis v. Budge. Well, does AEDPA deference apply to the waiver claim? No, it does not, Your Honor. Why? And that's because when a person is waiving his right to proceed, that is not actually a claim for relief. And so under 2254D, deference only applies to claims adjudicated on the merits. But as the Third Circuit explained in Fahy, because this wouldn't give him any entitlement to relief, just simply succeeding on the waiver claim would allow his other claims to be heard, there's no need to apply 2254D. Now, in this case, there's a number of ways to find that the waiver— It's a little strange to say that AEDPA deference applies— there's no deference applicable at all to that aspect of it because no claim. I mean, ultimately, it's all about whether or not he has a claim. Correct. And if there were no claim, it wouldn't matter, right? Correct, Your Honor. So a gateway to a claim that is not a claim? Yes, Your Honor. So essentially, because the California Supreme Court never adjudicated the merits of any of the 20 underlying claims, there's nothing to apply 2254D to. Waiver in this case is really a condition precedent to being able to consider those claims. And so because there is just no entitlement to relief, if you find that Mr. Kirkpatrick did not waive, that doesn't give him habeas relief. It just gives him the opportunity to have his claims heard on the merits. Well, no. Why wouldn't it at most give him an opportunity to have a finding made on that as to whether it was knowing—I mean, assuming that we get there, assuming we think there is such a right and assuming that we think that California Supreme Court didn't make an adequate finding on that, why wouldn't the most that he would get is a chance to go back to state court or perhaps a district court and have a finding made? Why isn't that the absolute most that he would get? Well, and so if this court determines that there's no waiver, it could remand to the district court to consider the claims on the merits. Because the reason that the district court never—  I mean, there was a waiver. We know there was, because it's in writing. The question, if there's a doubt as to whether it was knowing and intelligent, why wouldn't we remand for a finding whether it's knowing and intelligent? Why would you then go straight to considering the underlying claims? I'd actually like to take a step back, and I don't think there was actually, in fact, a waiver in this case. Well, there was a piece of paper, right? That's correct. Mr. Kirkpatrick began this process with a pro se waiver form with two sentences, stating he wished to waive his petition and he wished to be executed. Well, it wasn't a form, was it? It was like a piece of paper with his hand written, two sentences on it? Yes, Your Honor, and he titled it waiver form. A lot like, a lot like Barr, right? Yes, Your Honor. Very much like Barr. Yes, and that begins the process. Because a waiver must be knowing, intelligent, and voluntary, there's just simply no way to tell from that piece of paper whether Mr. Kirkpatrick appreciated the consequences of waiver, understood the claims in his petition, and wished to forego them. We understand that, and maybe you're right about that. Maybe you're not. I'm not sure you are right, but assuming you're right, why wouldn't the moose he would get a chance to go back and have proof on the question of whether it was knowing and intelligent? I mean, you want to say the next thing that happens if he wins on that claim is that we send the district court to consider the 21 underlying claims. Or we decide it ourselves, one or the other. We would be asking for a remand to the district court because there are more than 20 claims. Oh, I'm sorry, you mean whether or not there's a waiver? Yes, whether or not there's a waiver. Yes. There are several reasons we might, we're ahead of it because Judge Kaczynski's leading you through a lot of things that we may not have to concern ourselves with. But if we do decide that there was not a, that A, the EDPA doesn't apply to a waiver, and that the district court applied the wrong standard, then there are several reasons that we might reach the merits of the waiver or we might remand it to the district court. Yes, Your Honor, and I'm... One reason is that the state has acknowledged that the question was resolved by the district court and we might, the state's taken the position that there are alternate findings, one under EDPA and one on the merits without EDPA. So that we, if we reviewed the alternate finding of the district court and disagreed with it, then we could decide that question. We could affirm the district court on the basis that whether EDPA applied or not, the district court was correct in finding that there was a waiver, that there was no, there was a waiver. Yes, Your Honor, and we are... Depending on what theory we follow, we could remand or we could determine whether the district court was correct to no vote. Yes, Your Honor, and on the question of... But one way or the other, somebody would have to make a finding on knowingness and voluntariness. Either we do it by reviewing what we think the district court did or we remand it. It is certainly not the case that if we find what the California Supreme Court did was inadequate that we just jump right to considering the underlying petitioner, right? That is correct. You agree with that? Yes, we are asking this court to find that there simply was not enough evidence that this waiver was knowing and intelligent. Why is that the kind of thing that one could take further evidence on? If we think there wasn't enough, why isn't this the kind of thing that one would remand either to the state court or the district court and say, maybe there isn't enough on the paper there, but it could have been voluntary. It could have been knowing. It could have been intelligent. That's exactly the problem here. It could have been, and we just don't know. You could have evidence on the point, right? Correct. You could have testimony by the petitioner, right? Correct. You could take more evidence, and the point is there is not enough right now. Mr. Kirkpatrick was never... Is there enough to say this couldn't possibly have been a waiver? Yes, Your Honor. As a matter of law? Yes, Your Honor. Take me through that path. How does that work? Two separate paths. The first one is to find that no waiver existed. So Mr. Kirkpatrick's pro se... That what? No waiver existed. Mr. Kirkpatrick's pro se form begins this process to determine, is this waiver knowing, intelligent, and voluntary? And the referee and the California Supreme Court understood that a colloquy was required to ask him questions to make that determination. But when the referee twice wrote a letter to Mr. Kirkpatrick saying, if you actually intend to waive, you need to come to court and answer some questions, Mr. Kirkpatrick didn't appear. That's an indication that he didn't actually intend to waive. The second way to find that there was no waiver is that a valid waiver  and because there is no record showing that this waiver was knowing and intelligent, you simply cannot make the determination. You cannot find a waiver absent some indication in the record that Mr. Kirkpatrick... Where does this come from? The idea that you have some indication on the record? Supreme Court case? Yes. To begin with, the standard, nobody disputes that the standard is that the waiver must be knowing, intelligent, and voluntary. Well, I asked you a question about this to begin with. Yes. And so how else are you to determine whether a waiver is knowing, intelligent, and voluntary unless you ask? You can look at the record. He was mentally examined. He was found to be mentally competent. You could look at his experience in the courtroom. Or prior waivers he's made. There's lots of ways to figure it out. Well, in this court, in Dennis v. Budge says one of those considerations as does he understand those 20-plus claims in his petition and wish to forego them? And there is simply nothing in this record in which anybody ever discussed those claims with him. And so we just don't know. And in fact, we do have an indication that Mr. Kirkpatrick... It's a little weird. I mean, you know, the district court stays proceeding, sends him to state court to exhaust. He decides to not cooperate and say, no, I don't want it. And then as a result of that, he gets excused from the exhaustion requirement. It just seems like a path to a deliberate bypass of state court proceedings. Your Honor, I think in that regard, this court should be guided by the Seventh Circuit case in St. Pierre. And there the court recognized it's not unsympathetic to the plight that the state courts find themselves in when they deal with these obstreperous petitioners. However, the petitioner's behavior does not absolve any court of its duty to apply due process and ensure that an actual waiver existed, especially in a capital case when the consequences of waiver are so dire. Why wouldn't the fair thing be to send it back to state court and say, look, we'll suspend proceedings, go back and try again. And this time, she, you know, present your petition once again to the state courts. How many years ago did this occur in state court? His waiver form, I believe, was written in the year 1999-2000. Much more sympathetic to California Supreme Court now? I mean, of course, this court could send it back. However, for the same reasons that a petitioner is only required to go through the state procedure once for exhaustion purposes, the same should apply here. The California Supreme Court had the opportunity to rule on this waiver. It recognized that it needed to hold a waiver colloquy. The referee determined that he couldn't- But he won't come into court. He won't come into court for the referee. So what's the California Supreme Court supposed to do in those circumstances? They should have done what the district court did in this case when Mr. Kirkpatrick tried to waive his federal petition. The district court said, if you want to waive that petition, you must meet with a competency expert. And Mr. Kirkpatrick refused. And the district court said, then we're not going to consider your request. Well, competency expert is different. I mean, the competency was, in fact, determined here. But a competency expert is quite different from saying you've got to come into court and waive. That's true, Your Honor. But they're both conditions precedent to finding a waiver. And, in fact, in the district court scenario, the court first told Mr. Kirkpatrick, you have to come in for an inquiry. Nothing ever happened. Four years later, the court said, we want an update on competency. Mr. Kirkpatrick refused to meet with the expert. And so the district court said, I'm not considering your waiver. And, in fact, this has happened in other cases where a petitioner's refusal to participate in the process results in the court informing them, if you're not going to participate, then I'm not going to consider this waiver. As for the competency determination in this case, despite the fact that Mr. Kirkpatrick was ultimately found to be competent, that finding should not be entitled to any deference because there were not adequate procedures engaged in to reach that determination. Mr. Kirkpatrick had obvious signs of irrational behavior indicating mental illness. His letters described vast conspiracies against him. The guards are trying to kill him. They're part of a white or Jewish supremacist plot against him. He indicated... So what? So based on... He could be faking? I mean, you know, he had a competency determination. What's wrong with that? Based on his background of having mental health issues... Well, you disagree with that. But, you know, you had an expert who examined him and found him to be competent. You know, I understand. I mean, does the fact that you don't find it persuasive cut any ice? No, just the fact... We had a finding by the referee, right? Correct. But just the fact... What's wrong with that? The fact that one competency evaluation that lasted two and a half hours was inadequate based on this record. Did Bow get any more than that? Yes, he did, Your Honor. Not that I remember. Every court to have ultimately found waiver of a capital petitioner's right to proceed has not based a determination on less than two... Did Gilmour get any more than that? I don't know in Gilmour, Your Honor. But I can... All about Gilmour? Whitmore got two. Ball had two. Comer had two. Comer, a case out of this court, was evaluated for 20 hours... You're saying there's some requirement of two competency? No, Your Honor. It's not so much that there's a requirement, but due process does require adequate process. And on the facts of this case, two and a half hours from one expert simply was not adequate. Why not? I mean, it's just the hours? I don't understand. The Fifth Circuit has said in Motta v. Johnson that a petitioner's mental health history should influence the breadth and the depth of the competency examination. And so because Mr. Kirkpatrick did exhibit signs of mental illness, he really should have been examined for a longer period of time than two and a half hours. What kind of signs of mental illness? Again, his indications in his letters of these vast conspiracies... It's a bunch of letters. He does, yes. Could be faked or whatever. It's not somebody who's running around with bacon strips in his ears, naked. You know, writing a bunch of letters could be anything, including faking. And it's important to test those delusions. He said in one of these letters that he was attacked by courtroom staff during one of the status conferences at the reference hearing. I mean, just these indications of these delusions need to be tested. And especially when you have an expert who's only willing to test delusional statements made during the actual inquiry with him, two and a half hours simply is not enough because we know that signs of mental illness wax and wane, which makes it all the more important to have an extended competency evaluation. Just keeping an eye on my time here, I'd like to turn to the certified issue in which jurors were instructed that they could consider as aggravation the fact that Mr. Kirkpatrick poisoned dogs and threatened property. Now, it's undisputed... And threatened? Threatened property. Like a house. It's undisputed... I thought he threatened the daughter. Poisoned dogs and threatened property. I thought he threatened the daughter. The daughter, I'm sorry. The daughter, right? Yes, but... And the way he threatened the daughter was by saying, I'll get your dogs. You know, the dogs is not going to stop me from getting to your daughter. Yes, Your Honor. And the jurors were instructed that they could specifically considering the poisoning of the dogs and the threats against property as aggravating factors when those are non-statutory aggravating factors in California. It's also undisputed that California does not allow... I thought it was an open-ended statute and there was no limitation. No, Your Honor. That was the 1977 version of the California law. Mr. Kirkpatrick was sentenced under the 1978 version, which says that you can only consider statutory aggravating factors. And the California Supreme Court in this case held that it was error to instruct jurors that they could consider these as aggravating factors because they were not in the statute. Now, this also violated Mr. Kirkpatrick's 8th and 14th Amendment rights because the Supreme Court has instructed that when a state chooses to have capital punishment, it must develop a system that channels the jurors' sentencing discretion in order to avoid arbitrary and capricious sentences. California does this via its aggravating factors in 190.3. Now, we have an education of this on the merits from the state, right? Yes, Your Honor. Why the entitlement deference under AEDPA? This is a claim, right? Yes, this is an actual claim. 2254D typically applies. However, in this case, we argue that the presumption out of Johnson v. Williams that a state court decides the federal issue has been rebutted in this case. The state court treated this as a state law issue. It applied the state law harmless error test and it did not rely on federal law in any way. And how does the state law harmless error test differ from the constitutional standard? There are California cases that say it's essentially the same, but the fact that they chose the state law standard just shows that they weren't paying attention to the fact that it was a federal law issue. However, it does not ultimately change the analysis because this court must apply Brecht under any circumstances. But under Brecht, the state has the burden to show that this error did not have a substantial and injurious effect or influence on the jury's verdict. Now, in this case, we have objective evidence that jurors struggled to reach a verdict. They deliberated penalty for two days when all penalty phase evidence was introduced in one day. They the only defense presented penalty phase evidence was Mr. Kirkpatrick's seven page testimony, which contained little to no mitigating evidence. And yet jurors still deliberated penalty for two days. What do you make of People v. Wilson, which says that the state standard is essentially the same as Chapman? Your Honor, even if it is the same as Chapman, this court still must apply Brecht regardless. And so even looking at the factors... Well, but if they apply the same standard, wouldn't then Harrington v. Richter say that the presumption is that they have, in fact, applied the federal standard and were bound by it on that part? So in that situation, 2254D would apply to the prejudice analysis. But we know that Brecht subsumes the Chapman slash 2254D analysis. And so an analysis under Brecht, if you were to find the error was harmful, then that would necessarily show that the state court unreasonably found this error to be harmless. Now, Your Honors, I see that I have about nine minutes left. Unless you have any questions for me at this point, I'd like to reserve my time for rebuttal. Thank you. May it please the Court. Robert C. Schneider, Deputy Attorney General for the State of California. To begin where Kistner left off, this is a case in which injury to some dogs, temporary injury to some dogs, and a threat to damage the home of Shirley J. in order to get to her daughter, a 14-year-old girl, was included as evidence in the trial. That evidence was absolutely relevant and was completely properly admitted evidence. The Supreme Court found that this is relevant evidence to the legitimate aggravating factor of a threat to the girl. A threat to the girl is an aggravating factor that no one can test. Petitioner counsel argues that the jury was specifically instructed they consider the threat to the dogs and the threat to the property as an independent aggravating factor. Do you agree with that? Oh, they did. That's true. And the California Supreme Court said that was instructional error. You should not have labeled those relevant and admissible facts as aggravating factors. But merely applying the denomination of aggravating factor to relevant admissible evidence was insubstantial. The possibility that having heard that evidence, and again, that's only a bit of evidence they heard, this was the other elements they could have considered. It was evidence the prosecution relied on in its closing argument. Emphasized heavily. And that was all part of the argument that he was so resolved to injure this girl and want to make that so certain to the mother who he was talking to that he was even willing to poison dogs. That was relevant directly to the threat to the girl. As you all have come across, I'm sure, whenever a crime involves a threat, the first defense is, I didn't mean it. I was puffing, exaggerating. The prosecution put on evidence directly against that, saying this was not merely a puffery. It wasn't just exaggeration or hyperbole. He actually poisoned dogs and then called the family up and said, the dogs can't protect you now. I'll get the girl. He was going to get some white meat. These facts were all completely involved in one thing. The threat. The heir, which the Supreme Court recognized, an instructional heir of California law, was by labeling them as aggravating factors. Now, that's the heir. It's not the fact that the jury heard that information. It's not the fact they heard evidence of his threats to injure the dogs and injuring the house. That's all admissible. This is very different than cases where extraneous evidence is brought in. That was the only heir was in labeling that evidence as aggravation. But we can't stop there. We have to realize that that labeling must be compared to the rest of the circumstances the jury was considering. Mr. Kirkpatrick shot two young men in the head for a pittance of money. When he heard one of the two people was still alive, he said, I hope the damn kid dies. He had taken another young man and sexually assaulted him all night long in the back of a van. Another young man who refused to engage in a robbery with him, he beat him up and put his head down in a public toilet. And then there's the threat against Shirley J's daughter. All this is all one big package the jury's looking at. To say that of all that evidence, the deciding factor was the labeling of revealed evidence. It's not the evidence. They're complaining about the instruction. Right. They're not so much complaining about the evidence. And they rely on Brown v. Sanders saying that given the jury aggravating factor, that's not an aggravating factor. It is a denial of federal rights. Brown v. Sanders, of course, does not apply to this case because it was decided 11 years after this case. And it changed the way that the Supreme Court, henceforth. You're arguing Teague Bar. Yeah, it just doesn't apply. I'm sorry. You can't go back in time. We were dealing with the law at the time. The settled United States Supreme Court precedent at the time the Supreme Court of California made a decision. They couldn't see in the future that 11 years later, the United States Supreme Court might reconsider how it examined weighing and not weighing states. That just simply has nothing to do with it. But if you take Brown v. Sanders for an enduring principle, which should always be available for enduring principles rather than changes to the law, in Brown itself, there were two special circumstances that were misnamed. They shouldn't have been there. Error. And that was in the special circumstance phase, in the guilt phase, the hardcore Eighth Amendment narrowing phase, not in the subsequent selection phase in California's system. This is where the rubber hits the road in death penalties. Narrowing the field, bringing down the many to the few. That occurs at the trial phase, the guilt phase, which involves finding special circumstances. What were the aggravating circumstances that the jury was properly instructed on? I have the instruction. There was the fact of the crimes, the threat to the girl. There was the crime against the young man for the sexual assault, the assault on the young man who he wanted to join him in committing a crime and beat him up and try to put his head down in the toilet. And then the phone calls were threatening the home and the poisoning of the dogs. They could also consider... They were all listed as aggravating circumstances? Just in the instruction, yes. And if at any time in arguing this, which was completely proper, that evidence, the poisoning of the dog, the threat to assault the house to get to the people to injure the girl, though that was all admissible, just the denomination as aggravating factor was there. Well, I was asking you what were properly labeled as aggravating factors. The excess assault? Because you listed this one, which is not properly labeled as aggravating. What ones were properly the aggravating factors? Well, the circumstances of the crime can always be considered. OK. And then there's the forced oral calculation of the one young man, the sexual assault, and the physical assault on the other young man relating to his refusal to participate in a robbery. Those, additionally, were added. Those were proper. Those were crime. Again, we have to go back to... Even if we go to the Brecht standard, they are trying to claim, the petitioner is trying to claim, that this jury ignored the insignificant fact that Mr. Karpatchik put bolts in the for $600 that he had previously, during an armed robbery, by itself significant. He then assaulted one young man sexually, another one physically, and then threatened to get this young girl, but the jury said that's not important. What we're concerned about is the fact he temporarily injured some dogs, and that's what they made their decision on. That was the substantial injurious effect. Forget the dead boys. Forget the sexually assaulted boy. Forget all that. He temporarily injured some dogs. That, the Supreme Court of California said, is inconsequential. We cannot find it. And that finding received... That's really not quite how the calculus works. I mean, the jury might say the killing of the boys is bad, you know, the sexual assault is bad, you know, other things are bad, but maybe not bad enough, but then you add one more thing, you know, he injured the dogs, it might say, well, you know, there's one thing too many. They wouldn't have to sort of ignore the other things in order for the argument, petitioner's argument to work. They could well take him into account and just find him not sufficient. Well, in its own way, the Supreme Court of California found that there's no reasonable possibility that happened. And they have to take a look at reasonable jurors and make a determination. And what kind of deference do we owe them on that? The 2254D deference, because that is the Chapman Standard. There's no question under California law that is the Chapman Standard. What about petitioner's argument that they were not really applying? That's just petitioner's argument. I'm afraid when the Supreme Court of California addresses death penalty issues, they're fully aware of the constitutional implications. In Brown, the case that was cited in this case for the principal, it refers to four federal cases in Brown talking about the Chapman Standard. It is an analog to the Chapman Standard, just like people versus Johnson is an analog to Jackson versus Virginia in substantial evidence. This is not particularly controversial. This is the way California and many states, they have their parallel law. But California has made it very clear that when it comes to this standard, the no probability standard, that they are identical. The California Supreme Court has said, we have explained with Brown, the case that was cited in Kirkpatrick, reasonable possibility, the standard they applied, they said there's no reasonable possibility. And Chapman's reasonable doubt tests are the same in substance and effect. That's not controversial. To suggest because they cite it to a case that they recognize, these cases go back 20 years, this is not new. They cite a case that they repeatedly have said it's the same, they're analogs. That meant they were intentionally avoiding the federal issue. That violates the Johnson and Williams principles of making assumptions that the Supreme Court of California or any state court doesn't know what it's doing. It's just missing things. There's no basis for that in this case. There's no basis for them to suggest California was ignoring those principles. And of course, this is a state law issue, which California addresses, but they recognize, which is why they have the Brown standard, that sometimes California and federal cases, federal law, they're coextensive. That's correct. That's not a surprise to anyone. And so they have a standard that covers both. And then they went on and found it beyond a reasonable doubt. There's nothing more here to talk about, I'm afraid. The evidence was a minor instructional error that California addressed, recognized, addressed, and this court deserves to get this court's deference. And if you apply the Brecht standard, the petitioner's trying to suggest the Brecht standard is a higher standard than the beyond a reasonable doubt standard of Chapman. I don't know where that comes from. It's recognized that Brecht is a lesser standard. Where is the serious injurious effect of merely misnaming a factor for consideration? And in federal law, the state law's decisions on admitting evidence never gets to a point of a due process violation unless it's irrelevant. Putting in irrelevant evidence, that's another story we can talk about. This case, highly irrelevant. Highly irrelevant evidence on an admissible factor. And in fact, in Brown v. Sanders, if you want to use the new law, one of its exceptions is if the evidence can be admitted because of an admissible special circumstance or aggravating factor, then it's okay. Because naturally, you have to tell the whole story. And if other crimes inform the aggravating factor that was properly admitted, that other evidence can come in. In this case, this court also recently in Ryan v. Smith had a similar situation where other crimes' evidence would not have been admitted dealing with a person's sexual proclivities. He brought up a defense that raised the issue of sexual sadism. The people were then able to bring in all of his otherwise irrelevant criminal history to rebut that. This court last year said, that's admissible. It went to an issue that was brought up in the Arizona proceedings on the special circumstance that was relevant to address this special circumstance. Although it might not have been if it was just brought in on its own, freestanding. This was not freestanding. Again, this is not nearly as complicated as the petitioner wants to make it. It's quite simple. State lawyer, California Supreme Court recognized it. And on balance, the horrors that Mr. Karpatchi committed, admissible and proper, far, far outweighed calling two facts by their own name. Moving on to the issues of the uncertified. Mr. Karpatchi had a state petition, exhaust petition filed in state court. And the state of California proceeded apace on that. He then asked for it to be withdrawn. At that point, there was no evidence before the Supreme Court that he was anything other than competent. But the California Supreme Court decided on its own that it would have a hearing to determine competency and whether or not the waiver was known, intelligent, or voluntary. At this point, the state petition was not constitutionally required. Mr. Karpatchi had no entitlement to it. This is purely a matter of state law. And the rules that apply to it were state law rules. California decided it was going to give him a procedure to test his competency. At that point, even if he were trying to waive his trial rights, again, that's the ground zero for constitutional rights for criminal defendants. We have 4th, 5th, 6th, 8th, 14th Amendments all coming together in trials, counsel, juries, all those important issues. This was a successive collateral review in state court. Something purely... Why is that relevant to whether or not there was a waiver? It's the procedure to come to a waiver. There was a waiver. At this point, you have to go through... What are you arguing? You're arguing that the state law then applied to those claims, and that's correct, and that's why it was there trying to exhaust them, right? Excuse me, I'm sorry. It was there trying to exhaust those claims in state court. They were trying to exhaust the claims in state court. Okay, so why is all this stuff about this is state law even relevant to whether or not there was a valid waiver? The valid waiver comes into the process that California gave them to test the valid waiver if California's procedure... Okay, so you're saying the California Supreme Court referred it to a referee to determine whether the waiver was knowing and intelligent and voluntarily made, as well as whether or not it was competent. Correct. Okay, so it did that just on a whim? Or did it do it because the court thought it was required to make that determination to allow someone to waive all those claims? The state of California was conscientiously trying to determine what it wanted to determine. It didn't have to rely on anybody else. The state of California, in a state proceeding, made its own determination that it wanted to know if this was knowing, intelligent, and competent. They didn't know much for Patrick personally, so they decided to be prudential. Why would the California Supreme Court want to do that unless it thought it was constitutionally required to do so? Why would it create a whole new proceeding unless it thought it was required to do so? I don't understand why it would have to feel compelled to do something that it felt on its own merits was worthwhile doing. Worthwhile? Not compelled by law? It's not compelled by law. There's no law that says that you can't. You have to be anything to withdraw a state petition. I'll just suggest, I don't think that's your best argument here as to why this was about, how the California Supreme Court was able to come to the conclusion that this was a valid waiver. I'm sorry, I was doing preliminary. I'm only suggesting that there was no federal compulsion under any particular rule to give any particular standard. There was a federal compulsion for California to determine whether this was a knowing, willing, voluntary waiver. I don't know of any case that says that directly. Opposing counsel cited DeMoss v. Ball. Isn't that a night circuit case? It's a Supreme Court case. It's a Supreme Court case. Our ruling was unpublished. I remember the case. It was my case. I didn't remember that was in DeMoss v. Ball, but you're not familiar with the opinion. I'm familiar with it. My understanding was it was from a, not from an appeal, which is different. Does it matter whether it's a Supreme Court case or not if it doesn't apply? Well, I think it does apply to findings, the factual findings, but not 24-254-2. It applies when there's a decision on the merits. Or if there's fact-finding. I'm applying E, not D. Well, the question, you're going to have something. I mean, it may or may not have to be a Supreme Court case. Counsel just happened to cite a Supreme Court case. It's your position that there is no case requiring no intelligence waiver to waive a state habeas petition as a matter of federal law? I'm not aware of it, but we are prepared to assume, because there was procedures here and a decision was made. So what the minimum requirement was really isn't important. In this case... Well, it certainly is important. If there is, in fact, no federal requirement, then it doesn't matter, right? You know, if that's your position, then it doesn't matter whether it was voluntary or involuntary or knowing or whatever. You know, that's the end of the road if there's no federal requirement. I think that the California Supreme Court has to understand, has to believe that a piece of paper they received, that the person who wrote that was the person who wrote it, and they knew what they were writing. I'm sorry? The Supreme Court, I think, does have to understand that the waiver they received was, in fact, from the person who wrote it. They wouldn't find, receive something and say, I want to waive a petition and not even know it was the petitioner. And the person could be a raving lunatic and it wouldn't matter. That's all they have to do is say it's the Supreme Court. I'm sorry. That was a step one. Then, of course, if there was evidence that he was incompetent and a raving lunatic, then his waiver would be invalid, because a raving lunatic can't do anything. And his waiver might be invalid for other reasons under federal law. Yes, and again, our position is that there was a very full, complete, and detailed procedure. But what's the requirement? The requirement is that it be a knowing, willing, and voluntary waiver. Yes. Yeah. OK. I thought you had said no. Don't sort of be misled by Judge Reinhardt's leading questions. We all want to say yes to Judge Reinhardt. I take a lesson from the master. Well, Grasshopper, you have a lot to learn. Yeah. I'm sorry. I'm a voluntary and intelligent. So that's the question. Does California, does your client agree that it has to be knowing and intelligent? The California Supreme Court certainly... It's about a federal law. It is cited to Whitmore, which lists those criteria. So I believe it... Whitmore is a state case. No, no, the Supreme Court case. OK. So I believe it was acting under the assumption that it was compelled to find these facts. Whether or not it decided... So they did. They did have... So your position is that Whitmore does apply and does require knowing and intelligence? Again, it's... Whitmore, I don't think applies because it was an appeals case. And... Yeah, that's why I get... That's with Professor Arkansas. You can tell it's a direct appeal case. So the California Supreme Court may have thought that. So I ask you potato and you answer potato. You know, I don't want to know what the California Supreme Court thought. I'm asking what the position is of the state of California today as you stand there. Is it a federal requirement that waiver of a collateral attack and state... A state collateral attack has to be knowing and intelligent? Yes. There is a... There is a federal requirement. I believe that's to the standard. OK. I mean, if you... Then you're adopting... You're saying... He gave you the answer. You don't like it? No, no, I just want to make sure. Because he said different things. You said different things when you begin with. He said different things to answer to my question. I'm sorry. Yeah. Yeah, he said two completely opposite things. I think you must like Judge Kaczynski more than me. I'm sorry. That's impossible. Absolutely. Yeah, I mean, you definitely said different things. I apologize, Your Honor. My position was... I mean, I asked you this question. I said, DeMoss needs a response. I said, no, that doesn't apply. You know, you... And then you answer Judge... But is that your view? That's fine. These are known as alternative facts. Alternative law. I'm sorry about that. But my position is that the California Supreme Court gave the protections of that. That may be your position, but it's wholly irrelevant to the question we're asking. You know, you keep answering and you keep giving an answer that has no bearing on the question. The question is, is it a federal requirement that state habeas petitions have to be withdrawn, have to be waived knowingly and voluntarily? And you gave Judge Wardlaw one answer. You gave me a different answer. So I think... I apologize for my confusion. My understanding was that I must have been looking at the Ninth Circuit case and DeMoss. I'm sorry? I must have been looking at the wrong iteration of DeMoss on that issue. No, there was no Ninth Circuit opinion. It was unpublished. Oh, okay. I apologize. I thought I saw that anyway. Well, you are. It was unpublished. Supreme Court published, but we didn't publish. Yeah. But again, assuming that... And we got reversed by the Supreme Court. So... Assuming that the federal constitution applies... But that's not the question. The question is, does it apply? Okay. So you want to go back to Judge Wardlaw and give her an answer to her question? Please, Your Honor. Okay. I think what we have is federal constitutional law required that the Supreme Court find out if the waiver was valid. That is, knowingly, intentionally, and voluntarily made, and that he was competent. And that's why they sent the matter to the referee. And the referee said he couldn't make that determination. Yet we come up with a Supreme Court decision that says that he was... Waived his right to all the claims in this habeas petition. How can that be? Because the method of determining knowingly, intentionally, and voluntarily, there's no particular way of determining that, that you have to follow a particular set of procedures. In this case... Does that finding have to be supported by some evidence? Absolutely. And that's where my next response is. In this case, the first day that Mr. Kirkpatrick appeared in court, the trial judge engaged in a colloquy with him. I'm sorry, when you say appeared in court, this means at trial? No, I'm sorry, at the Marin hearing, at the Marin County competency hearing, where the referee, the first day Mr. Kirkpatrick came in, he was very pleasant. They had a nice discussion, chitchatted. And Mr. Judge, the referee, asked him, what do you intend to accomplish by this? And Mr. Kirkpatrick said, I want to be found competent, and I want to waive my petition. So he immediately recognized exactly what was happening here. He didn't say, I don't understand what you're saying, Your Honor. He understood exactly why he was there. I want to waive my... I want to be found competent. Why does that make it intelligent and knowing? Usually intelligent and knowing, it's like a guilty plea. You have to explain to the waiver, make sure he understands what he's in fact giving up. I mean, just saying, I want to waive, is that enough? That would show that he knew that he was doing a waiver, which is an important element. He knew he was waiving something. He wasn't asking for a larger cell or anything. He knew what this was about. It was about waiving a petition. That's the first step. But there was no examination to find out if he knew what exactly was in the petition and what was the nature of the claims he was waiving and whether he would lose rights to those claims permanently if he waived them at that stage of the procedure. That's why I then asked him questions, which you can see in the colloquy that followed, in which I told him and asked him, you understand, if you waive this state petition, that will have consequences in federal court and the issues that you're raising in the petition will not be exhausted and you'll be barred from addressing those issues in federal court. And those may be the issues, and it was mentioned a number of times, that would be the good issues that could save you from execution. The judge had also mentioned that. You know, he said, your state petition, if that's successful, that could prevent your execution. So he was aware of what he was doing. He wasn't making an intelligent decision. There's a lot of discussion between him and the referee about what the effect of this will be. And the referee keeps telling him and he keeps saying that if I withdraw this, I can proceed myself as my attorney. I can get rid of the attorney and present the kind of case I want. And the referee agreed with him that, yes, that's the effect. If you do this, you will be in charge of your case and you can present what you want. That's a different issue from whether this will allow them to let you withdraw your petition. The discussion was about him wanting to withdraw the petition, which the judge said, if the Supreme Court allows you to waive this, you will be in effect the attorney. And the decision, you can then do what you want to do, what you're told, and go back to federal court. That was his goal. Where is this colloquy? Is it in the excerpts? Yes, it is. Let's look at the actual words. Part of it's on page 68 of the appellant's opening brief. It may be in the brief, but where is it in the excerpts? Where is it on? Excerpt of record 1154 to 55. In part. I don't know. This is a very confusing part. Some of it is excerpt of record 1123. I'm sorry? ER 1135. You have ER 1133 to 36. I think we went through a number of pages. But all of that being said, he seemed to go back and forth. And then the referee, before whom this colloquy took place, didn't find that he was able to say that Kirkpatrick had made the waiver knowingly and intelligently, even based on all this. The referee was not the person making the decision. It was the California Supreme Court. Referees, just like magistrate judges who file R&Rs, they aren't making a decision. He presented the entire package to the California Supreme Court, who made the decision, the California Supreme Court. And we briefed this issue before the California Supreme Court, after the magistrate's hearing. And my time is almost gone. And in that briefing, it was clearly pointed out, here is the evidence that supports knowingly, intelligently, and voluntarily. The colloquy that I had with Mr. Kirkpatrick, that the FPD, the Federal Public Defender, mentioned things, and the discussion of the court. And at the end of that first hearing, which occurs, the judge said, I find you perfectly intelligent. There's no evidence of any kind of mental illness. There's nothing to prevent you from doing all this. It's been a pleasure talking to you. But for the circumstances, everything in that first hearing, starting at 1135 on, these issues were all addressed specifically. Well, so what you said, I don't know if you were the Deputy Attorney General here. I am. You were. OK, so you said, you used the word that he understands what happens in the state court may have an impact. If the state court were to dismiss it, that might have the impact of limiting what you could raise. It didn't say you'd be foreclosed forever on those claims. And he also said, my intention is to stay alive as long as possible, which also goes against him. I mean, if he waived that, that's losing time on litigating those, as opposed to going into the federal court. Mr. Kirkpatrick likes to use the volunteer method. He's used it throughout his 30-some-year career in prison to get attention. He immediately disavows it. He has never, he said it many times. He said he wanted to stay alive. That's not the volunteer method. No, no, earlier on, but at that point, the assumption was, you say you want your execution to be continued, to be carried out, and it's not the case. He didn't mean that. That was to get attention. In the colloquy with the judge with me, we explained a number of ways. And one of those ways was very specifically, even if you think you have a good claim, and you change your mind, and you go back to Judge Keller in the district court, and you say, I want to raise this now, because you have not exhausted, Judge Keller would say, no, you can't raise it. And that might lead to your execution. The federal public defender then said, oh, yeah, I'll also tell him that the deputy AG might go back in the federal court and say, the whole petition should be thrown out. And that will leave you nothing between you and execution. What did you understand him to mean when he said, I understand that my writ for exhaustion is already filed by the PD's office? There was a petition filed at that point in the state Supreme Court. Right, so he was thinking he was taken care of on that issue, which was wrong. And that's why I disabused him of that. And he said, I appreciate that, in this exchange. Yes, but I told him, if you withdraw it, that petition will have no effect. It sounds like you were talking about two different things at that point. I don't know. Maybe you were there. Maybe you thought this is what you were talking about. But reading this. He thanked me at the end for, you know. No, he said, you're covering your ass. Which is exactly true. He wasn't thanking you. He's a wise guy. He's very smart and has a sense of humor. And most certainly, I was trying to cover. I wanted to make sure that he was aware, if he abandons this proceeding, withdraws it, he will lose his rights. It won't just be strategy. It won't just be tactics. He will lose his right to go back into the California Supreme, the federal court, and then raise those issues. If he, if he, I don't know how much clearer you can put it. And then the FPD jumped in and said, tell him also that you may want to withdraw the entire petition. I didn't recognize that you're five minutes over time. Let me ask you one question before you sit down. Uh, I, I alluded to the fact that your position in this court is that the district court made alternative findings. Correct. That's correct. They made a finding under, uh, EDPA and then he made a finding to Novo. Correct. Okay. So, uh, we would have to, if we were to reverse the finding on the ground that he, uh, the, the first finding on the ground that EDPA did not apply to the waiver, we would then have to reach the second finding that to Novo, uh, that the district court found to Novo that the waiver was valid. Correct. Okay. Thank you. Thank you, your honor. Okay. Your honor, just, just to follow up on a couple of the waiver issues, um, Mr. Kirkpatrick did indicate that he was unaware of the claims in his petition. He, he was unaware of the claims in his state petition. He refused mail. Does he have to be aware of the claims? Yes, your honor. Why isn't it enough that he is, if he is aware that in fact, whatever claims they are, he's given them up. Why does he have to be aware of the actual, uh, substance of a claim? I said, look, you've got claims, uh, that might, that might keep you from being executed and whatever they are, when you do this, you give them up. Because the Supreme court has said in Whitmore and this court has said in Dennis versus Budge that you need to understand your claims and intend to give them up. And so when Mr. Kirkpatrick's indicating that he's throwing away mail from our office, that he's refusing mail from our office. And when he's asking the referee, if the claim he's most interested in about the police purchasing the murder weapon from a gang member is in his appeal, it indicates the importance of making sure it's explained to him what claims he is foregoing. Um, I did go back and check your honor and Demosthenes did involve a waiver of a Nevada state post conviction, um, case. And in fact, this court has said in Comer versus Shiro that the Supreme court... Demosthenes was a petition filed by his next of kin, as I recall, by his mother. And the question there was whether or not, uh, whether or not he lacked the competence that would enable his mother. And I think there was somebody else involved. Yes. The, uh, right. So this wasn't really straight. This was not a actual petition filed by him. The, in Demosthenes itself, you are correct. It was the next of kin, or it was a next friend case. But at bottom, it was a state petition that had been waived in the Nevada state court. And this court said in Comer versus Shiro, the Supreme court has held that a waiver of knowing intelligent and voluntary. Now, I'd also like to point out that what, um, the attorney general refers to as a waiver colloquy was actually a status conference to set up competency and, um, the colloquy procedures. This was never intended to be a colloquy. The referee repeatedly stated his intention to hold a colloquy following the competency determination. And that simply never happened. Because your clients wouldn't cooperate. That's correct, your honor. Because my client would not show up when he was told that if he actually intended to waive, he needed to show up. Um, going back to the certified issue, I would just like to point out that the AG refers back to Brown versus Sanders as establishing the fact that this was a constitutional error. But in fact, stringer versus black, which is a 1992 case, if clearly established federal law is needed in that case, that 1992 case predating Mr. Kirkpatrick's denial in state court clearly states that when the jury is told to consider invalid factors in the weighing process for selection of penalty, you must apply federal constitutional harmless error analysis. This isn't a new concept stringer basis on Furman, Godfrey, Greg versus Georgia. Also, the AG repeatedly refers to the only error here being the denomination of this admissible evidence as an aggravating factor. But in his briefs, he relies on Zant versus Stevens for that proposition. And Zant dealt with a Georgia statute that does allow non statutory aggravating factors to be considered. California doesn't. And so the fact that this was called an aggravating factor is not simply one of semantics. It violated the law. It could still be harmless, right? It could still be harmless if the court makes that determination. It's still the proper aggravating factors. What were the proper ones? The circumstances of the crime, the sexual assault against Dominion, the physical assault against Johnson and the threats to Ms. Johnson's daughter. But in this regard, it is important to note that when the. Excuse me, you said the Johnson daughter. Right. But before that, you said Johnson. Oh, I'm sorry. There was a physical assault on Stephen Thomas. I'm sorry. I'm sorry. Thomas. OK, you said Johnson. I apologize. I misspoke. No, I just want to make sure I have this right. OK. And it is interesting to note that when the prosecutor referred to Ms. Johnson's testimony during his closing, only one time did he refer to the fact that Mr. Kirkpatrick threatened her daughter. Four times he referred to the poisoning of the dogs. And so, again, this is the element he was highlighting. This is an element that, in fact, the judge relied upon as an aggravating factor when he considered the motion to modify the death verdict. And it's not simply that you look at what a reasonable juror would do in this case. As this court has said in Williams v. Calderon, you look at not a hypothetical reasonable juror. You look at what actually happened in this case. And as discussed, there are objective clues in this record that jurors struggle to reach a verdict. Is the test what an average juror would do or whether there would be one juror who might be affected? The court looks at what happened in this case, so what jurors did in this case. But because California requires unanimous jury, it is enough that if one juror would have been substantially influenced by this evidence, there perhaps would have been a hung jury and, therefore, there would have been a different result. So what one juror would have done is important. Did the Federal Public Defender Office prepare the exhaustion petition that is the subject of the waiver? Yes, Your Honor. And unless there are any further questions, I'd like to thank you for your time. Thank you. The case just argued will be submitted. The court will stand and recess. The court is adjourned.
judges: Reinhardt, Kozinski, Wardlaw